# U.S. District Court
# U.S. District of Minnesota (DMN)
# CIVIL DOCKET FOR CASE #: <u>0:20–cv–00889–PJS–BRT</u>

Tyler v. Hennepin County et al
Assigned to: Judge Patrick J. Schiltz
Referred to: Magistrate Judge Becky R. Thorson
Cause: 28:1446 Petition for Removal

Date Filed: 04/07/2020
Date Terminated: 12/04/2020
Jury Demand: Plaintiff
Nature of Suit: 950 Constitutional – State Statute
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Geraldine Tyler**
*on behalf of herself and all others similarly situated*

represented by **Charles R. Watkins**
Guin, Stokes & Evans, LLC
321 South Plymouth Court
Suite 1250
Chicago, IL 60604
312–878–8391
Fax: 205–226–2357
Email: <u>cwatkins@gseattorneys.com</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel C Hedlund**
Gustafson Gluek PLLC
120 South 6th Street
Suite 2600
Mpls, MN 55402
612–333–8844
Fax: 612–339–6622
Email: <u>dhedlund@gustafsongluek.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J Nordin**
Gustafson Gluek PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Mpls, MN 55402
612–333–8844
Fax: 612–339–6622
Email: <u>dnordin@gustafsongluek.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garrett D Blanchfield , Jr**
Reinhardt Wendorf & Blanchfield
W1050 First National Bank Bldg.

332 Minnesota Street
St. Paul, MN 55101
651–287–2100
Email: g.blanchfield@rwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marisa C Katz**
Teske Katz, PLLP
222 S Ninth Street
Suite 1600
Minneapolis, MN 55402
612–746–1558
Email: katz@teskekatz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roberta A Yard**
Reinhardt Wendorf & Blanchfield
W1050 First National Bank Bldg.
332 Minnesota Street
St. Paul, MN 55101
651–287–2100
Email: r.yard@rwblawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vildan A Teske**
Teske Katz, PLLP
222 South Ninth Street
Suite 1600
Minneapolis, MN 55402
612–746–1558
Email: teske@teskekatz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**State of Minnesota**
*TERMINATED: 04/10/2020*

**Defendant**

**Cynthia Bauerly**
*in her capacity as Commissioner,*
*Minnesota Department of Revenue*
*TERMINATED: 04/10/2020*

**Defendant**

**Hennepin County**                    represented by    **Jeffrey M. Wojciechowski**
                                                          Hennepin County Attorney's Office
                                                          Civil Division
                                                          300 South 6th Street, A2000
                                                          Minneapolis, MN 55487
                                                          612–348–8533
                                                          Email: Jeffrey.Wojciechowski@hennepin.us
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Kelly K. Pierce**
                                                          Hennepin County Attorney's Office
                                                          300 South 6th Street
                                                          Suite A2000
                                                          Minneapolis, MN 55487
                                                          612–348–5488
                                                          Fax: 612–348–8299
                                                          Email: kelly.pierce@hennepin.us
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Rebecca Lee Stark Holschuh**
                                                          Hennepin County Attorney's Office –
                                                          A2000
                                                          300 S 6th St Ste A–2000
                                                          Mpls, MN 55487
                                                          612–348–4797
                                                          Fax: 612–348–8299
                                                          Email: rebecca.holschuh@hennepin.us
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Mark V. Chapin**                     represented by    **Jeffrey M. Wojciechowski**
*Auditor–Treasurer, in his official*                     (See above for address)
*capacity*                                               *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                          **Kelly K. Pierce**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Rebecca Lee Stark Holschuh**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|

| 04/07/2020 | 1 | | NOTICE OF REMOVAL from Second Judicial District Ramsey County, case number 62−CV−19−6012 (filing fee $ 400, receipt number AMNDC−7626476) filed by Mark Chapin, Hennepin County. Filer requests summons issued. (Attachments: # 1 Summons and Complaint, # 2 Exhibit(s) A − L, # 3 Notice of Filing of Notice of Removal, # 4 Civil Cover Sheet) (Holschuh, Rebecca) (Entered: 04/07/2020) |
|---|---|---|---|
| 04/08/2020 | 2 | | TEXT ONLY ENTRY: CLERK'S NOTICE OF INITIAL CASE ASSIGNMENT. Case assigned to Judge Patrick J. Schiltz per 3rd/4th Civil Master list, referred to Magistrate Judge Becky R. Thorson. Please use case number 20−cv−889 PJS/BRT. (KDS) (Entered: 04/08/2020) |
| 04/08/2020 | 3 | | TEXT ONLY ENTRY: Notice re: Non−Admitted Attorney

We have received documents listing **Charles R. Watkins** as counsel of record. If he or she wishes to be listed as an attorney of record in this case, he or she must be admitted to the bar of the U.S. District Court of Minnesota in accordance with Local Rule 83.5 (a), (b) and (c) or temporarily admitted pro hac vice in accordance with Local Rule 83.5 (d) or (e).

For more admissions information and forms, please see the Attorney Forms Section of the courts website at href=http://www.mnd.uscourts.gov/FORMS/court_forms.shtml#attorneyforms. (KDS) (Entered: 04/08/2020) |
| 04/08/2020 | 4 | | NOTICE of Appearance by Jeffrey M. Wojciechowski on behalf of Mark V. Chapin, Hennepin County. (Wojciechowski, Jeffrey) (Entered: 04/08/2020) |
| 04/08/2020 | 5 | | NOTICE of Appearance by Kelly K. Pierce on behalf of Mark V. Chapin, Hennepin County. (Pierce, Kelly) (Entered: 04/08/2020) |
| 04/09/2020 | 6 | | STIPULATION *to Extend Time to Answer or Respond to Plaintiff's Amended Complaint* by Mark V. Chapin, Hennepin County. Jointly Signed by Geraldine Tyler. (Holschuh, Rebecca) (Entered: 04/09/2020) |
| 04/09/2020 | 7 | | PROPOSED ORDER TO JUDGE re 6 Stipulation. (Holschuh, Rebecca) (Entered: 04/09/2020) |
| 04/09/2020 | 8 | | ORDER on 6 Stipulation. Signed by Magistrate Judge Becky R. Thorson on 4/9/2020. (MSK) (Entered: 04/09/2020) |
| 04/10/2020 | 9 | | NOTICE of Voluntary Dismissal by Geraldine Tyler (Attachments: # 1 Exhibit(s) A)(Blanchfield, Garrett) (Entered: 04/10/2020) |
| 04/14/2020 | 10 | | ORDER/NOTICE: Pretrial Conference set for 6/10/2020 at 01:00 PM via telephone before Magistrate Judge Becky R. Thorson. Signed by Magistrate Judge Becky R. Thorson on 4/13/2020. (Attachments: # 1 Consent Form)(MSK) Modified text on 4/14/2020 (MMP). (Entered: 04/14/2020) |
| 04/24/2020 | 11 | | MOTION to Dismiss/General filed by Mark V. Chapin, Hennepin County. (Holschuh, Rebecca) (Entered: 04/24/2020) |
| 04/24/2020 | 12 | | NOTICE OF HEARING ON MOTION 11 MOTION to Dismiss/General : Motion Hearing set for 7/8/2020 at 08:30 AM before Judge Patrick J. Schiltz. (Holschuh, Rebecca) (Entered: 04/24/2020) |

| | | | |
|---|---|---|---|
| 04/24/2020 | 13 | | MEMORANDUM in Support re 11 MOTION to Dismiss/General filed by Mark V. Chapin, Hennepin County. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Holschuh, Rebecca) (Entered: 04/24/2020) |
| 04/24/2020 | 14 | | MEET and CONFER STATEMENT re 11 Motion to Dismiss/General filed by Mark V. Chapin, Hennepin County.(Holschuh, Rebecca) (Entered: 04/24/2020) |
| 04/24/2020 | 15 | | PROPOSED ORDER TO JUDGE re 11 MOTION to Dismiss/General filed by Mark V. Chapin, Hennepin County.(Holschuh, Rebecca) (Entered: 04/24/2020) |
| 05/07/2020 | 16 | | STIPULATION *Extending Time to Respond to Mot to Dismiss* by Geraldine Tyler. Jointly Signed by Hennepin County and Mark V. Chapin. (Blanchfield, Garrett) (Entered: 05/07/2020) |
| 05/07/2020 | 17 | | PROPOSED ORDER TO JUDGE re 16 Stipulation. (Blanchfield, Garrett) (Entered: 05/07/2020) |
| 05/22/2020 | 18 | | MOTION for Admission Pro Hac Vice for Attorney Charles R. Watkins. Filing fee $ 100, receipt number AMNDC–7744059 filed by Geraldine Tyler. (Blanchfield, Garrett) (Entered: 05/22/2020) |
| 05/22/2020 | 19 | | MEMORANDUM in Opposition re 11 MOTION to Dismiss/General filed by Geraldine Tyler. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Blanchfield, Garrett) (Entered: 05/22/2020) |
| 05/26/2020 | 20 | | TEXT ONLY ENTRY: ORDER granting 18 Motion for Admission Pro Hac Vice of Attorney Charles R. Watkins for Geraldine Tyler. Approved by Magistrate Judge Becky R. Thorson on 5/26/2020. (NAH) (Entered: 05/26/2020) |
| 06/05/2020 | 21 | | REPORT of Rule 26(f) Planning Meeting. Filed by Geraldine Tyler. Jointly Signed by Hennepin County and Mark V. Chapin.(Blanchfield, Garrett) (Entered: 06/05/2020) |
| 06/10/2020 | 22 | | Minute Entry for proceedings held before Magistrate Judge Becky R. Thorson: Initial Pretrial Conference held on 6/10/2020. Order to issue. (LPH) (Entered: 06/10/2020) |
| 06/12/2020 | 23 | | Reply to Response to Motion re 11 MOTION to Dismiss/General filed by Mark V. Chapin, Hennepin County. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Holschuh, Rebecca) (Entered: 06/12/2020) |
| 06/17/2020 | 24 | | ORDER/NOTICE: PRETRIAL SCHEDULING ORDER. Signed by Magistrate Judge Becky R. Thorson on 6/17/2020.(MSK) (Entered: 06/17/2020) |
| 06/29/2020 | 25 | | LETTER TO MAGISTRATE JUDGE by Geraldine Tyler . (Blanchfield, Garrett) (Entered: 06/29/2020) |
| 07/08/2020 | 26 | | Minute Entry for proceedings held before Judge Patrick J. Schiltz: Motion Hearing held on 7/8/2020 re 11 MOTION to Dismiss/General filed by Mark V. Chapin, Hennepin County. Motion taken under advisement, written order forthcoming. (Court Reporter Debra Beauvais) (CLG) (Entered: 07/08/2020) |
| 07/08/2020 | 27 | | BRIEFING ORDER. Signed by Judge Patrick J. Schiltz on 7/8/2020.(CLG) (Entered: 07/08/2020) |
| 07/20/2020 | 28 | | |

| | | | |
|---|---|---|---|
| | | | LETTER TO DISTRICT JUDGE by Mark V. Chapin, Hennepin County . (Pierce, Kelly) (Entered: 07/20/2020) |
| 07/21/2020 | 29 | | (Text–Only) NOTICE TO ATTORNEY. The deadline for the submission of supplemental briefing is extended to 7/29/2020 and the parties are directed to address both the Michigan Supreme Court's ruling in Rafaeli, LLC v. Oakland County, No. 156849, 2020 WL 4037642 (Mich. July 17, 2020) and this Court's jurisdiction in their supplemental briefs. (CLG) (Entered: 07/21/2020) |
| 07/28/2020 | 30 | | EXPEDITED DAILY TRANSCRIPT SERVICES REQUEST to Court Reporter Debra Beauvais. (Pierce, Kelly) (Entered: 07/28/2020) |
| 07/28/2020 | 31 | | EXPEDITED DAILY TRANSCRIPT SERVICES REQUEST to Court Reporter Debra Beauvais. (Blanchfield, Garrett) (Entered: 07/28/2020) |
| 07/28/2020 | 32 | | TRANSCRIPT of Motions Hearing held on 7/8/2020 before Judge Patrick J. Schiltz. (78 pages). Court Reporter: Debra Beauvais. For a copy of the transcript, please file a Transcript Request under *Other Filings/Other Documents*.<br><br>**Transcript temporarily sealed to determine if redactions are required. Parties have 7 days to file a *Notice of Intent to Request Redaction* or *Notice that No Redaction is Required*. In accordance with Judicial Conference policy and Local Rule 80.1, the transcript may be released and made remotely electronically available to the public in 90 days.** For further information on redaction procedures, please review Local Rule 5.5 and *Case Information* >*Transcripts, Court Reporters and Digital Audio Recordings*.<br><br>Notice Intent/No Intent to Request Redactions due 8/4/2020.<br>Redaction Request due 8/18/2020.<br>Redacted Transcript Deadline set for 8/28/2020.<br>Release of Transcript Restriction set for 10/26/2020.<br><br>(DKB) (Entered: 07/28/2020) |
| 07/29/2020 | 33 | | MEMORANDUM *Plaintiff's Supplemental Memorandum Addressing Subject Matter Jurisdiction and Rafaeli, LLC v. Oakland County* filed by Geraldine Tyler. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Blanchfield, Garrett) (Entered: 07/29/2020) |
| 07/29/2020 | 34 | | DECLARATION of Garrett D. Blanchfield in Opposition to 11 MOTION to Dismiss/General filed by Geraldine Tyler. (Attachments: # 1 Exhibit(s) A)(Blanchfield, Garrett) (Entered: 07/29/2020) |
| 07/29/2020 | 35 | | MEMORANDUM *Supplemental Memorandum Of Defendants Hennepin County And Mark V. Chapin In Support Of Motion To Dismiss* filed by Mark V. Chapin, Hennepin County. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Holschuh, Rebecca) (Entered: 07/29/2020) |
| 07/29/2020 | 36 | | DECLARATION of Rebecca Holschuh by Mark V. Chapin, Hennepin County . (Attachments: # 1 Exhibit(s) Exhibit A, # 2 Exhibit(s) Exhibit B)(Holschuh, Rebecca) (Entered: 07/29/2020) |
| 08/04/2020 | 37 | | DOCUMENT FILED IN ERROR – WILL REFILE – NOTICE THAT NO REDACTION IS REQUIRED by Geraldine Tyler re 32 Transcript, . Attn: |

| | | | |
|---|---|---|---|
| | | | Court Reporter Debra Beauvais. (Blanchfield, Garrett) Modified text on 8/4/2020 (MMP). (Entered: 08/04/2020) |
| 08/04/2020 | 38 | | DOCUMENT FILED IN ERROR – WILL REFILE – NOTICE THAT NO REDACTION IS REQUIRED by Mark V. Chapin, Hennepin County re 32 Transcript . Attn: Court Reporter Debra Beauvais. (Pierce, Kelly) Modified text on 8/4/2020 (MMP). (Entered: 08/04/2020) |
| 08/04/2020 | 39 | | NOTICE THAT NO REDACTION IS REQUIRED by Mark V. Chapin, Hennepin County re 32 Transcript,,,,, . Attn: Court Reporter Debra Beauvais. (Pierce, Kelly) (Entered: 08/04/2020) |
| 08/04/2020 | 40 | | NOTICE THAT NO REDACTION IS REQUIRED by Geraldine Tyler re 32 Transcript,,,,, . Attn: Court Reporter Debra Beauvais. (Blanchfield, Garrett) (Entered: 08/04/2020) |
| 08/26/2020 | 41 | | NOTICE of Change of Address by Vildan A Teske (Teske, Vildan) (Entered: 08/26/2020) |
| 08/26/2020 | 42 | | NOTICE of Change of Address by Marisa C Katz (Katz, Marisa) (Entered: 08/26/2020) |
| 10/01/2020 | 43 | | LETTER TO DISTRICT JUDGE by Geraldine Tyler . (Attachments: # 1 Supplement Freed Opinion)(Blanchfield, Garrett) (Entered: 10/01/2020) |
| 11/11/2020 | 44 | | NOTICE by Geraldine Tyler *Notice of Filing Supplemental Authority* (Blanchfield, Garrett) (Entered: 11/11/2020) |
| 12/04/2020 | 45 | | ORDER granting 11 Motion to Dismiss. (Written Opinion) Signed by Judge Patrick J. Schiltz on 12/4/2020. (CLG) (Entered: 12/04/2020) |
| 12/07/2020 | 46 | | JUDGMENT (Attachments: # 1 Civil Notice – appeal)(MMP) (Entered: 12/07/2020) |
| 12/29/2020 | 47 | | NOTICE OF APPEAL TO 8TH CIRCUIT as to 46 Judgment, 45 Order on Motion to Dismiss/General by Geraldine Tyler. Filing fee $ 505, receipt number AMNDC–8350123. (Blanchfield, Garrett) (Entered: 12/29/2020) |
| 12/30/2020 | 48 | | TRANSMITTAL OF APPEAL LETTER TO U. S. COURT OF APPEALS, 8TH CIRCUIT, Re: Notice of Appeal to 8th Circuit 47 . (MMP) (Entered: 12/30/2020) |

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GERALDINE TYLER, on behalf of herself and all others similarly situated, | Case No. 20-CV-0889 (PJS/BRT) |
| Plaintiff, | |
| v. | ORDER |
| HENNEPIN COUNTY and MARK V. CHAPIN, Auditor-Treasurer, in his official capacity, | |
| Defendants. | |

Charles R. Watkins, GUIN, STOKES & EVANS, LLC; Roberta A. Yard and Garrett D. Blanchfield, Jr., REINHARDT WENDORF & BLANCHFIELD; Daniel C. Hedlund and Daniel J. Nordin, GUSTAFSON GLUEK PLLC; and Marisa C. Katz and Vildan A. Teske, TESKE KATZ, PLLP, for plaintiff.

Rebecca L.S. Holschuh, Kelly K. Pierce, and Jeffrey M. Wojciechowski, HENNEPIN COUNTY ATTORNEY'S OFFICE, for defendants.

Plaintiff Geraldine Tyler owed $15,000 in unpaid state property taxes, penalties, costs, and interest. Acting pursuant to a Minnesota statute, defendants Hennepin County and Hennepin County Auditor-Treasurer Mark Chapin (collectively "the County"[1]) foreclosed on Tyler's property, sold it for $40,000, and kept all of the

---

[1] In Minnesota, county auditors are tasked with the enforcement of state property tax laws. ECF No. 13 at 3; *see also* Minn. Stat. § 279.02. Because all counts in the amended complaint are pleaded against both Hennepin County and Chapin, and because neither defendant raises any argument or defense not also raised by the other, the Court refers to Hennepin County and Chapin collectively as "the County."

proceeds.  Tyler filed this lawsuit alleging, among other things, that the County violated her constitutional rights by retaining the value of her property in excess of the $15,000 tax debt that Tyler owed.

This matter is before the Court on the County's motion to dismiss.  ECF No. 11. For the reasons that follow, the County's motion is granted, and Tyler's amended complaint is dismissed with prejudice.

## I.  BACKGROUND

Tyler purchased a condominium in Minneapolis in 1999.  Am. Compl. ¶ 5.  Tyler moved out of her condo in 2010 and began renting an apartment.  At that time, Tyler stopped paying the property taxes that she owed on the condo.  *Id.*

In Minnesota, property taxes become a lien against the subject property at the time they are assessed.  Minn. Stat. § 272.31.  Property taxes that are not paid during the year in which they are due become delinquent on January 1 of the following year.  *See* Minn. Stat. § 279.03 subd. 1.  If the taxes become delinquent, the county may obtain a judgment against the property.

On or before February 15 of each year, the county auditor generates a delinquent tax list identifying the properties on which delinquent taxes are owed, the delinquent taxpayers, and the amounts of taxes and penalties owed.  Minn. Stat. § 279.05.  The filing of the delinquent tax list commences a lawsuit against each property on the list.

-2-

*Id.*  Both the delinquent tax list and notice of the action are published twice and mailed to the delinquent taxpayers and to anyone else who has requested notice.  Minn. Stat. §§ 279.09–279.091.  If no answer is filed, the district-court administrator enters a judgment against the property.  Minn. Stat. § 279.16.

On the second Monday in May, each parcel with an unsatisfied judgment is sold to the state through a procedure by which the county (acting on behalf of the state) "bids in" (i.e., purchases the property for) the amount of delinquent taxes, penalties, costs, and interest.  Minn. Stat. § 280.01.  At this time, title vests in the state subject to the right of redemption set out in Minn. Stat. § 281.  Minn. Stat. § 280.41.  During the redemption period (which for most properties is three years), the delinquent taxpayer and any other person claiming an interest in the property may redeem it for the amount of the delinquent taxes, penalties, costs, and interest.  Minn. Stat. §§ 281.01–281.02, 281.17.  The county must notify the delinquent taxpayer and anyone else claiming an interest in the property of their right to redeem—and of the date on which that right will expire—by posting notice at the county auditor's office, publishing notice, mailing notice by certified mail, and personally serving notice on any occupant of the property.  Minn. Stat. § 281.23.

If a property owner cannot afford to redeem but wishes to avoid forfeiture, the property owner may make a "confession of judgment."  Minn. Stat. § 279.37.  By so

doing, the taxpayer agrees to the entry of judgment for all delinquent taxes, penalties, costs, and interest.  Confessing judgment allows the taxpayer to consolidate her entire delinquency (which may span several years) into a single obligation to be paid in installments over five to ten years.  *Id.*

If the property owner does not exercise her right of redemption under § 281 or make a confession of judgment under § 279.37, final forfeiture occurs.  Absolute title to the property vests in the state, and all taxes, penalties, costs, interest, and special assessments are canceled, along with all other liens against the property held by any party.  Minn. Stat. §§ 281.18, 282.07.

Following final forfeiture, the former property owner may apply to repurchase the property.  The repurchase price is the amount of the taxes, penalties, costs, interest, and special assessments owing at the time of forfeiture, along with any taxes that would have been collected if the property had not been forfeited.  Minn. Stat. § 282.241.  If the application to repurchase is granted, the county may allow the repurchase price to be paid in installments.  *Id.*

Following final forfeiture, the county holds a public classification meeting to determine whether forfeited properties should be sold to private parties or retained for public use.  Minn. Stat. § 282.01 subd. 1.  If sold to a private party, the property is sold at its appraised value.  Minn. Stat. § 282.01 subds. 3–4.  If sold to a public entity, the

property may be sold at less than its appraised value (or even transferred at no cost).

Minn. Stat. § 282.01 subd. 1a.

If the property is sold, the proceeds of the sale are, of course, not applied to the

unpaid taxes, because the tax deficiency was cancelled at the time of final forfeiture.

Rather, Minn. Stat. § 282.08 directs that the net proceeds must be distributed in the

following order:  First, any expenses incurred for municipal improvements and

environmental cleanup that increased the value of the property must be paid.  Second,

any special assessments must be paid.  Third, the county may choose to designate a

portion of the proceeds to help fund forest development or county parks or recreational

areas.  And finally 40 percent of what remains must be distributed to the county,

40 percent to the school district, and 20 percent to the town or city.

Minnesota's statutory tax-foreclosure scheme does not provide former property

owners with any means to claim the proceeds of the sale in excess of the tax debt.

Minnesota is one of just a handful of states that statutorily requires the surplus to be

distributed to recipients other than the former property owner.[2]

---

[2]*See, e.g.*, Ind. Code § 6-1.1-25-9 (prescribing the order of distribution of proceeds similar to Minn. Stat. § 282.08); Or. Rev. Stat. § 275.275 (same); and Mont. Code Ann. § 15-17-322 (directing that any surplus "must be deposited to the credit of the county general fund"); *see also* Jenna Fools, Comment, *State Theft in Real Property Tax Foreclosure Procedures*, 54 Real. Prop. Tr & Est. L. J. 93, 99–103 & n.38 (2019) (explaining that the majority of states "require the foreclosing government unit to return surplus funds from a property tax foreclosure sale to the previous property owner").

Pursuant to this statutorily-prescribed process, the County obtained a judgment against Tyler's condo in April 2012 after she received notice of the foreclosure action and failed to file an answer.  Am. Compl. ¶ 5.  Tyler then received notice of her right to redeem, but at no point during the three-year redemption period did she redeem or seek a confession of judgment.  After the County took absolute title to her condo in July 2015, Tyler did not apply to repurchase the property.  The County sold the condo for $40,000 four months later.  At the time, Tyler's outstanding tax debt (including penalties, costs, and interest) was just $15,000.

Tyler filed this action in state court, alleging that the County's retention of the "surplus"—that is, the value of her condo in excess of her $15,000 tax debt—is unconstitutional and that the County has been unjustly enriched.  The County removed the case to this Court and now moves to dismiss for failure to state a claim.

## II.  ANALYSIS

### A.  Subject-Matter Jurisdiction

The Court must initially determine whether it has subject-matter jurisdiction over Tyler's claims.  Because those claims involve the administration of state and local taxes, both the Tax Injunction Act ("TIA") and the related comity doctrine create potential barriers to this Court's exercise of jurisdiction.  *See Diversified Ingredients, Inc. v. Testa*, 846 F.3d 994, 996 (8th Cir. 2017) (explaining that the TIA is jurisdictional).

-6-

### 1.  The Tax Injunction Act

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.  "The Act is a gesture of comity toward the states; recognizing the centrality of tax collection to the operation of government, the Act prevents taxpayers from running to federal court to stymie the collection of state taxes." *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001). The TIA deprives federal courts of jurisdiction over claims seeking injunctive or declaratory relief; it is not clear whether the TIA also bars jurisdiction over claims seeking damages.[3]  *See California v. Grace Brethren Church*, 457 U.S. 393, 408–11 (1982). Both Tyler and the County argue that the TIA does not deprive this Court of jurisdiction over Tyler's claims.

Whether the parties are correct depends on the exact nature of those claims.  At times, Tyler has seemed to argue that the County acted unlawfully when it took title to

---

[3]*See Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 107 (1981) ("Because we decide today that the principle of comity bars federal courts from granting damages relief in [state tax] cases, we do not decide whether [the TIA], standing alone, would require such a result."); *see also Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1124 (9th Cir. 2016) ("[T]he Supreme Court has not yet decided whether the Tax Injunction Act bars claims for damages.  That is a question we need not resolve because an award of statutory damages is precluded here by the federal-state comity doctrine."); *Wright*, 256 F.3d at 636 ("It is an open question whether the [TIA] covers damages suits . . . .").

her condo.[4]  Under the TIA, however, this Court may not exercise jurisdiction over any claim seeking to enjoin or restrain the "collection" of any state tax.  28 U.S.C. § 1341. The Supreme Court has held that forfeiture is a form of tax "collection" for purposes of the TIA.  *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 10 (2015).  Thus, to the extent that Tyler challenges the County's seizure of her condo, Tyler's request for injunctive and declaratory relief is barred by the TIA.

In her supplemental briefing, however, Tyler clarifies that she is not pursuing any challenge to the forfeiture of her condo or any other conduct of defendants, save for their retention of the surplus following final forfeiture of her condo.  *See* ECF No. 33. For the reasons that follow, the Court finds that the TIA does not deprive it of jurisdiction over that claim.

Again, the TIA deprives federal courts of jurisdiction over challenges to the "assessment, levy or collection" of a state tax.  28 U.S.C. § 1341.  In *Direct Marketing Association v. Brohl*, the Supreme Court defined "assessment" to mean "the official recording of a taxpayer's liability" or "the process by which that amount is calculated." 575 U.S. at 9.  "Levy" was defined to mean "an official governmental action imposing, determining the amount of, or securing payment on a tax."  *Id.* at 10.  And "collection"

---

[4]*See, e.g.*, Am. Compl. ¶ 29 & n.2 (suggesting that even if Tyler had an opportunity to reclaim the surplus, Minnesota's tax-forfeiture scheme would still be unconstitutional).

-8-

was defined to mean "the act of obtaining payment of taxes due."  *Id.*  The Court held

that liens, distraint, and forfeiture are all forms of "collection" for purposes of the TIA.[5]

*Id.*

     *Brohl* addressed the question of whether a lawsuit challenging a Colorado law

imposing certain notice and reporting requirements in connection with use taxes sought

to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State

law" for purposes of the TIA.  The Tenth Circuit had dismissed the lawsuit, finding that

it sought to "restrain" the assessment and collection of taxes because "if successful, it

'would limit, restrict, or hold back the state's chosen method of enforcing its tax laws

and generating revenue.'"  *Id.* at 7 (quoting 735 F.3d 904, 913 (10th Cir. 2013)).  The

Supreme Court reversed.  The Court held that the challenged reporting and notice

requirements were not *part* of the "assessment" or "collection" of taxes, but rather

*preceded* those acts.  *Id.* at 11.  The Court explained:

> Enforcement of the notice and reporting requirements may
> improve Colorado's ability to assess and ultimately collect
> its sales and use taxes from consumers, but the TIA is not

_____

     [5]A "lien" is a "legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied."  To "distrain" is "[t]o force (a person, [usually] a tenant), by the seizure and detention of personal property, to perform an obligation (such as paying overdue rent)."  And "forfeiture" is "[t]he divestiture of property without compensation" or "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty" by "instantaneously transferr[ing] [title] to another, such as the government, a corporation, or a private person."  Black's Law Dictionary (11th ed. 2019).

-9-

> keyed to all activities that may improve a State's ability to
> assess and collect taxes.  Such a rule would be inconsistent
> not only with the text of the statute, but also with our rule
> favoring clear boundaries in the interpretation of
> jurisdictional statutes.  The TIA is keyed to the acts of
> assessment, levy, and collection themselves, and
> enforcement of the notice and reporting requirements is
> none of these.

*Id*. at 11–12 (internal citation omitted).

The Court also found that the lawsuit was not seeking to "restrain" the assessment or collection of taxes, even though, if successful, the lawsuit might well inhibit those activities.  *Id.* at 12–14.  The Court interpreted the word "restrain" narrowly to mean "'[t]o prohibit from action,'" "'to put compulsion upon,'" or "'to enjoin,'" *id.* at 13 (quoting Black's Law Dictionary 1548 (3d ed. 1933))—terms that "capture[] only those orders that stop (or perhaps compel) acts of 'assessment, levy and collection,'" *id.* (quoting 28 U.S.C. § 1341).  "Applying the correct definition," the Court said, "a suit cannot be understood to 'restrain' the 'assessment, levy or collection' of a state tax if it merely inhibits those activities."  *Id.* at 14.

In this case, Tyler is challenging the County's retention of the surplus equity in her condo *after* the County had collected every penny of the delinquent taxes, penalties, costs, and interest that she owed.  In the words of *Brohl*, "[t]he TIA is keyed to the acts of assessment, levy, and collection themselves," and the County's retention of the surplus equity in Tyler's condo "is none of these."  *Id.* at 12.  Moreover, although

-10-

eliminating the ability of counties to threaten taxpayers with the loss of their surplus

equity could inhibit counties' ability to collect delinquent taxes, *Brohl* makes clear that

"merely inhibit[ing]" the collection of state taxes is not the same thing as "restraining"

their collection for purposes of the TIA.  *Id.* at 14.[6]

The Sixth Circuit came to a similar conclusion in *Freed v. Thomas*, 976 F.3d 729

(6th Cir. 2020).  Like Tyler, Donald Freed lost his home after he failed to pay his

property taxes.  Freed's property was sold for $42,000, all of which was retained by the

State of Michigan, even though the amount of Freed's tax debt was just $1,109.06.  *Id.*

at 732.  Freed filed suit in federal court, seeking declaratory and injunctive relief, as well

as damages.  After the district court dismissed the case for lack of subject-matter

jurisdiction, the Sixth Circuit reversed, explaining:

> The TIA does not preclude the exercise of federal jurisdiction
> in this case because Freed is not attempting to enjoin
> Michigan's assessment, levy, or collection of a state tax.
> First, Freed does not dispute his tax liability or delinquency.
> As such, he is not challenging the assessment or levy of
> taxes.  Second, Freed does not quarrel with Michigan's
> authority to foreclose, sell his property, and satisfy his tax
> debt from the proceeds of the sale.  As a result, Freed does
> not challenge or seek to enjoin state tax collection
> procedures.  Instead, Freed challenges Michigan's post-
> collection failure to reimburse him for the excess proceeds

---

[6]*See also Lussenhop v. Clinton Cnty.*, 466 F.3d 259, 265–68 (2d Cir. 2006) (holding
that challenge to sufficiency of notice of forfeiture proceedings was not barred by TIA);
*Wells v. Malloy*, 510 F.2d 74, 77 (2d Cir. 1975) (holding that TIA did not bar challenge to a
Vermont law suspending a taxpayer's license for failure to pay a vehicle tax).

from the sale of his property and the State's refusal to
compensate him for the excess after-tax equity of his
property.  Thus, this is a case about post-collection federal
constitutional violations that may proceed in federal court,
not a tax case barred by the TIA.

*Id.* at 734.[7]

---

[7]The only directly contrary case law of which the Court is aware also came out of
the Sixth Circuit and was displaced by *Freed.*  In *Wayside Church v. Van Buren County*,
847 F.3d 812, 822–23 (6th Cir. 2017), the Sixth Circuit found that the TIA barred federal-
court jurisdiction over a challenge to Michigan's retention of the surplus following a
tax-forfeiture sale.  But in *Freed* the Sixth Circuit held that the discussion of the TIA in
*Wayside Church* was dicta and therefore nonbinding.  976 F.3d at 738–40.  *See also
Hammoud v. Cnty. of Wayne*, No. 15-CV-14461, 2016 WL 4560635 (E.D. Mich. Sept. 1,
2016) (finding that various constitutional challenges to Michigan's tax-forfeiture scheme
were barred by the TIA), *aff'd* 697 F. App'x 445 (6th Cir. 2017); *Rafaeli, LLC v. Wayne
Cnty.*, No. 14-13958, 2015 WL 3522546, at *6–9 (E.D. Mich. June 4, 2015) (finding that the
TIA barred plaintiffs' due-process challenge, but dismissing takings claim as unripe
rather than on the basis of the TIA); *but see Pung v. Kopke*, No. 1:18-cv-1334 (W.D. Mich.
Sept. 29, 2020) (finding that plaintiff's constitutional claims, including takings claim
challenging the retention of surplus, did not "implicate the TIA or comity doctrine,"
and distinguishing *Rafaeli, LLC v. Wayne County*, but without citing *Freed*).

Other cases dismissing challenges to tax forfeitures and tax-forfeiture sales under
the TIA are distinguishable.  In *District Lock & Hardware, Inc. v. District of Columbia*, 808
F. Supp. 2d 36 (D.D.C. 2011), for example, the court remanded a challenge to the
sufficiency of the notice of forfeiture proceedings.  Although the Court analyzed the
issue under the TIA, the court ultimately remanded on comity grounds.  *District Lock* is
also distinguishable because, unlike Tyler, the plaintiff in that case contested the
amount of its tax liability.  In *Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001), the Seventh
Circuit found that claims brought by the purchaser of tax liens were barred by the TIA.
Wright had obtained several "certificates of purchase" at Cook County's annual tax-lien
sale, then sued arguing that the County misrepresented the value of the properties.  The
Seventh Circuit held that the action was barred by the TIA because Wright's challenge
was to the lien sale—which is "a mode of tax collection"—and, in effect, sought a
refund of state taxes.  *Id.* at 637.  Unlike Wright, Tyler is not challenging any aspect of

(continued...)

In reaching this conclusion, the Sixth Circuit relied heavily on *Coleman through Bunn v. District of Columbia*, 70 F. Supp. 3d 58 (D.D.C. 2014) ("*Coleman I*").  Benjamin Coleman lost his home, worth about $200,000, after he failed to pay $133.88 in property taxes.  *Id.* at 62.  Coleman filed suit in federal court alleging that the loss of the surplus equity in his home amounted to an unconstitutional taking.  Similar to Tyler and Freed, Coleman "d[id] not seek to regain his home, d[id] not dispute that the District may use tax sales to satisfy delinquent property taxes, and agree[d] with the District that he owed $133.88 in property taxes, plus penalties, costs, and interest."  *Id.* at 62–63.  Coleman challenged only the District's failure to compensate him for the loss of the surplus equity.

The district court held that the TIA did not bar Coleman's claims because "a ruling in Mr. Coleman's favor would not allow him to avoid paying any tax."  *Id.* at 68.  As the court explained, the TIA does not eliminate jurisdiction over challenges to "independent incentives" that states use to encourage the payment of taxes.  *Id.*  The TIA only eliminates jurisdiction over claims seeking to enjoin, suspend, or restrain the act of collection itself, and "collection" is limited to the act of obtaining payment of taxes due.  *Id.* at 68–69; *see also Brohl*, 575 U.S. at 10–11.

---

[7](...continued)
the forfeiture sale, and therefore is not challenging the collection of taxes.

The Court is persuaded by the reasoning of *Freed* and *Coleman I* and holds that the TIA does not deprive the Court of jurisdiction over Tyler's claim that the County acted unlawfully when, after seizing her condo, the County retained the surplus equity.

### 2.   Comity

"More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration."  *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010).  However, "[u]nlike the TIA, the comity doctrine is nonjurisdictional."  *Brohl*, 575 U.S. at 15.  It "is a prudential doctrine," and "'[i]f the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system.'"  *Levin*, 560 U.S. at 432 (quoting *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977)).

Here, as the County itself acknowledges, "the County has removed this case from state court and submitted itself to this Court's jurisdiction for resolution of this constitutional challenge to Minnesota's property tax scheme."  ECF No. 35 at 10.  The Court therefore finds that dismissal based on comity is not warranted.

Having found that it may exercise jurisdiction over Tyler's claims, the Court now turns to the merits.

### B.  Standard of Review

-14-

Tyler argues that the County acted unlawfully by retaining the surplus equity in her condo.  Specifically, Tyler alleges that the County violated the United States and Minnesota Constitutions in three ways:  (1) by effecting a taking without just compensation; (2) by imposing an excessive fine; and (3) by depriving her of substantive due process.  Tyler also alleges that the County has been unjustly enriched. The County has moved to dismiss all counts for failure to state a claim.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Id.* at 555. In assessing the sufficiency of the complaint, the Court need not consider legal conclusions that are couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The Court must, however, accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.  *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).

*C.  Takings Claim*

The Takings Clause of the Fifth Amendment to the United States Constitution (made applicable to the states through the Fourteenth Amendment) provides that "private property [shall not] be taken for public use, without just compensation."

-15-

Article I, Section 13 of the Minnesota State Constitution similarly provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."[8]  Tyler alleges that the County took her property (specifically, the surplus equity in her condo) without compensating her in violation of the federal and state constitutions.

At the outset, it may be useful to review what is *not* at issue with respect to Tyler's takings claim:

First, Tyler is not challenging the sufficiency of the notice or process that she received.  Tyler does not dispute that she received notice of how much in taxes she owed and the deadline by which she had to pay those taxes, that she received notice that her condo was added to the delinquent tax list triggering a lawsuit against the property, or that she received notice of her right to redeem and the date on which the redemption period expired.  *See* Minn. Stat. §§ 279.091, 281.23.  Tyler also does not dispute that she had multiple opportunities to avoid the forfeiture of the surplus equity. She could have paid her taxes on time.[9]  She could have paid her taxes after receiving

---

[8]Although the Takings Clause of the Minnesota Constitution is broader than the Takings Clause of the United States Constitution, Minnesota courts rely on federal case law in interpreting the state provision where, as here, there is "no argument that any . . . property was 'destroyed or damaged.'" *Hall v. State*, <u>908 N.W.2d 345, 352</u> n.5 (Minn. 2018).

[9]Tyler has never claimed that she could not afford to pay her taxes.  Tyler's tax
(continued...)

-16-

notice that her condo was on the delinquent tax list.  She could have redeemed her

property by paying her taxes any time during the three-year redemption period.  She

could have made a confession of judgment pursuant to Minn. Stat. § 279.37.  And

following final forfeiture of the condo—which occurred more than four years after her

first missed payment—she could have applied to repurchase the condo for the amount

of the delinquency.  Minn. Stat. § 282.241 subd. 1.  Tyler had opportunity after

opportunity to avoid the forfeiture of the surplus equity.  Thus Tyler—wisely—does not

bring a procedural-due-process challenge.[10]

Second, Tyler is not challenging the County's seizure of her condo—or, for that

matter, anything that the County did up to and including selling her condo following

final forfeiture.  Tyler is challenging only the failure of the County to pay the surplus

equity to her.  As previously explained, the TIA bars this Court from hearing claims

challenging the forfeiture of Tyler's condo to the County, as forfeiture is a form of tax

"collection" for purposes of the TIA.  *Brohl*, <u>575 U.S. at 10</u>.  And any such challenge

would almost certainly fail on the merits because the authority of local governments to

---

[9](...continued)
debt never exceeded $15,000, and she had at least $40,000 in equity in her condo.

[10]*See Rafaeli, LLC v. Oakland Cnty.*, No. 156849, <u>2020 WL 4037642</u>, at *11 (Mich.
July 17, 2020) (explaining that "[a] claim of an unconstitutional taking . . . is distinct
from a claim of property deprivation without due process of law," and finding "no legal
basis to conclude that defendants' compliance with the [statutory] notice provisions
justifies defendants' retention of the surplus proceeds").

seize real property in satisfaction of unpaid taxes is clearly established.  *See, e.g., Jones v. Flowers*, 547 U.S. 220, 234 (2006) ("People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property.").

Turning, then, to Tyler's takings claim:  A litigant does not plead a viable takings claim under either the federal or state constitution unless the litigant plausibly pleads that the government took something that belonged to her.  In this case, Tyler argues that the "something" that the County took was the surplus equity in her condo.  Thus, the critical question is whether that surplus equity belongs to Tyler—i.e., whether Tyler retained a property interest in the surplus equity after absolute title to the condo passed from Tyler to the County.[11]

"Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law."  *Phillips v.*

-----

[11]The County cites *Bennis v. Michigan*, 516 U.S. 442 (1996), and *Lukkason v. 1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803 (Minn. Ct. App. 1999), for the proposition that a forfeiture is *never* a taking.  But *Bennis* and *Lukkason* are of little help.  Both cases addressed the government's use of its police powers to seize the instrumentalities of criminal activity.  The cases give little guidance about whether, after a delinquent taxpayer's property is forfeited, the government may seize the value of the property in excess of the tax debt.  *See Rafaeli*, 2020 WL 4037642, at *10 (finding that "*Bennis* is distinguishable and provides us little guidance as it relates to plaintiffs' takings claim," and concluding that "the Court of Appeals improperly conflated the meaning of 'forfeiture' in an unrelated area of law with the meaning of 'forfeiture' as expressly described under" the relevant tax statute).

-18-

*Wash. Legal Found.*, <u>524 U.S. 156, 164</u> (1998) (citation and quotation marks omitted).

Tyler argues that she owns the surplus equity by virtue of the fact that she owned the condo. Tyler also argues that the common law of Minnesota gives her a right to the surplus equity. The Court will examine her arguments in turn.

1. Ownership of the Condo

The Supreme Court analyzed a takings claim very similar to Tyler's almost 65 years ago in *Nelson v. City of New York*, <u>352 U.S. 103</u> (1956). The plaintiffs owned two properties in New York City, both with water bills that had gone unpaid for several years. *Id.* at 105. After providing notice and a seven-week redemption period, the City foreclosed on the properties. *Id.* at 105–06. The first property was subject to outstanding charges in the amount of $65 and was sold for $7,000. *Id.* at 105. The City retained all proceeds from the sale. The second property was subject to outstanding charges in the amount of $814.50, was assessed at $46,000, and was retained by the City rather than sold. *Id.* at 106. The plaintiffs offered "to pay with interest and penalties all amounts owing to the City," but the City refused their offer. *Id.* The plaintiffs then filed suit, seeking to recover the surplus proceeds from the sale of the first property, and to set aside the County's deed to the second property, alleging that the City's actions violated the Takings Clause of the United States Constitution.

-19-

In arguing that the City took their property without paying just compensation, the plaintiffs relied on *United States v. Lawton*, <u>110 U.S. 146</u> (1884).  In *Lawton*, the property owner failed to pay federal property taxes in the amount of $170.50.  The federal government seized and sold the property to satisfy the tax debt.  The sale price was $1,100.  *Id.* at 147.  The former property owner sued and was awarded the sale proceeds less the tax debt (i.e., $929.50).  In affirming the award, the Supreme Court relied on an earlier case, *United States v. Taylor*, <u>104 U.S. 216</u> (1881), which construed the same federal tax-forfeiture provision and held as a matter of statutory interpretation that a former property owner was entitled to the surplus following the sale.  Citing *Taylor*, the Court in *Lawton* found that "[t]o withhold the surplus from the owner would be to violate the fifth amendment to the constitution, and deprive him of his property without due process of law or take his property for public use without just compensation.  If he . . . applies for the surplus money, he must receive at least that." <u>110 U.S. at 150</u>.

In *Nelson*, the plaintiffs argued that property owners have a "fundamental right to the surplus" following a tax-foreclosure sale, citing *Lawton*.  Reply Brief for Appellants, *Nelson v. City of New York*, <u>352 U.S. 103</u> (1956), <u>1956 WL 89029</u>, at *4.  The Supreme Court disagreed, explaining that *Lawton*'s constitutional language had been

-20-

dicta, given that the Court had already held that the relevant federal *statute* gave the property owner a right to the surplus.  *Nelson*, 352 U.S. at 109–10.

Unlike the federal statute at issue in *Lawton*—which was interpreted in *Taylor* to give property owners an unconditional right to the surplus—the New York City Code provided the plaintiffs with only a conditional right to the surplus.  If the plaintiffs had filed an answer during foreclosure proceedings and established that their interest in the properties substantially exceeded the amounts owed, then the plaintiffs could have sought a court order forcing a sale of both properties and awarding any surplus to the plaintiffs.[12]  But because the plaintiffs failed to file an answer during foreclosure proceedings—indeed, failed to take any action at all until after the City obtained judgment against both properties and sold one of them—the plaintiffs had no right to the surplus, and thus could not pursue a takings claim.  "What the City of New York has done," the Court explained "is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or recover[] any surplus,

---

[12]1952 N.Y.C. Admin. Code §§ D17–6.0(a), D17–12.0(a); *In re Foreclosure of Tax Liens, Borough of Brooklyn*, 149 N.Y.S.2d 679, 680 (N.Y. App. Div. 1956) ("The code provides that where parties interested in the property default in answering, the judgment in the action must direct that an absolute deed be given to the city, but if a party serves and files a verified answer, setting forth the nature and amount of his interest in the property, the court should inquire whether the case is a proper one for directing a sale so that surplus moneys may be available to the answering party.  If the property of the answering owner has a value substantially exceeding the amount of the tax liens, a proper case for a sale is made out." (internal citations omitted)).

retain the property or the entire proceeds of its sale."  *Nelson*, 352 U.S. at 110.  The Court

held that "nothing in the Federal Constitution prevents this where the record shows

adequate steps were taken to notify the owners of the charges due and the foreclosure

proceedings."  *Id.*  Critically, then, the Supreme Court found that the plaintiffs did not

have a property interest in the surplus despite the fact that they had owned the seized

property.

Minnesota's tax-foreclosure scheme, unlike either the federal statute at issue in

*Lawton* or the New York City Code at issue in *Nelson*, does not give the property owner

even a conditional right to the surplus.  Once a property is forfeited and sold, Minn.

Stat. § 282.08 governs the distribution of the net proceeds.  As described above, the

statute dictates that, first, any expenses incurred for municipal improvements and

environmental cleanup that increased the value of the property be paid, and then,

second, any special assessments be paid.  Minn. Stat. § 282.08.  After that, the county

may elect to designate funds for forest development or county parks or recreation areas,

and then whatever remains must be divided among the county, school district, and

town or city.  *Id.*  Thus, although Minnesota law provides multiple opportunities for the

property owner to avoid forfeiture—and even to repurchase the property for the

amount of the tax debt *after* final forfeiture—if the property owner fails to avail herself

-22-

of these opportunities and her property is sold, she has no right to the surplus

proceeds.[13]

Oregon's tax-forfeiture scheme, like Minnesota's, gives the property owner no

right to the surplus.  In *Reinmiller v. Marion County*, No. CV. 05-1926-PK, 2006 WL

2987707 (D. Or. Oct. 16, 2006), the court found that this feature of Oregon's scheme

made the plaintiff's takings claim even weaker than the (unsuccessful) takings claim of

the plaintiffs in *Nelson*.  The court explained:

> This case is stronger [for the government] than *Nelson*
> because here we have a statute that directs the manner of
> distributing excess proceeds.  While Reinmiller argues for
> the application of *United States v. Lawton*, 110 U.S. 146 (1884),
> which . . . was a statutory construction case that relied on an
> earlier Supreme Court decision to determine that the statute
> in question required excess proceeds to be returned to the
> taxpayer . . . the Oregon statute at issue here is clear, [and]
> these statutory construction cases do not inform this
> decision.

*Id.* at *3.

In sum, then, the United States Supreme Court has unambiguously declined to

recognize a former property owner's "fundamental interest in the surplus" by virtue of

_____

[13]Tyler repeatedly asserts in her supplemental briefing that Minnesota's statutory
tax-foreclosure scheme is "silent" as to whether the former property owner has a right
to the surplus.  ECF No. 33 at 6, 11.  The Court disagrees.  Minn. Stat. § 282.08 quite
precisely dictates how every dollar of the sales proceeds must be used, and it does not
allot a single one of those dollars to the former property owner.  If a statute says that
"only those age 21 and older may purchase alcohol," the statue is not "silent" about
those under age 21.

her prior ownership of the forfeited property.  To the contrary, *Nelson* held that the

former owner has a property interest in the surplus only if a provision of a constitution,

statute, or municipal code creates such an interest.  *See also Ritter v. Ross*, 558 N.W.2d

909, 912 (Wis. Ct. App. 1996) ("a taxpayer has a recognizable interest in the excess

proceeds from such a sale only if the state constitution or tax statutes create such an

interest").  Like the Oregon statute at issue in *Reinmiller,* Minnesota's statutory scheme

gives the property owner no right to the surplus.

### 2.  Minnesota Common Law

Tyler argues that even if no Minnesota *statute* gives her a property interest in the

surplus equity, the *common law* of Minnesota creates such a right.

A few courts have held that the common law can create a property interest in the

surplus created by a tax-foreclosure sale.  For example, in *Coleman through Bunn v.

District of Columbia*, No. 13-1456 (EGS), 2016 WL 10721865 (D.D.C. June 11, 2016)

("*Coleman II*"), the court declined to dismiss a takings claim similar to Tyler's after

finding that D.C. common law recognized home equity as marital property subject to

distribution in divorce proceedings.  In the court's view, this was sufficient to establish

the plausibility of the plaintiff's claim that he had a property interest in the surplus

equity.  Similarly, in *Rafaeli, LLC v. Oakland County*, No. 156849, 2020 WL 4037642, at

-24-

*1–20 (Mich. July 17, 2020), the Michigan Supreme Court recognized a property right in surplus equity based on state common law.

Tyler argues that, like D.C., Minnesota recognizes a common-law property interest in home equity, citing cases involving marital dissolution and bankruptcy.  ECF No. 19 at 10.  More to the point, Tyler argues that, like Michigan, Minnesota specifically recognizes a common-law property interest in surplus equity in the tax-foreclosure context.  In support of her claim, Tyler relies on a 136-year-old decision of the Minnesota Supreme Court, *Farnham v. Jones*, 19 N.W. 83 (Minn. 1884).

*Farnam* involved an 1881 Minnesota statute (Minn. Laws 1881, c. 135) that "provid[ed] for a sort of general clearing-up tax sale" by requiring the sale of certain tax-delinquent properties.  *Taxes in Hennepin Cnty. v. Baldwin*, 65 N.W. 80, 82 (Minn. 1895).  Specifically, the 1881 Act required the state to sell properties that were tax delinquent as of 1879 or earlier.  *Farnham*, 19 N.W. at 84.  The Minnesota Supreme Court construed the 1881 Act—which did not explicitly address the disposition of any surplus created by the mandated sales—to require that "any surplus realized from the sale must revert to the owner."  *Id.* at 85.  The court found the statutory silence about the disposition of the surplus to be "immaterial," as "the right to the surplus exists independently of such statutory provision[.]"  *Id.*  But in reaching its conclusion that any surplus had to be paid to the former owner of the property, the court relied in large

part on the *statute*—specifically, on the fact that the 1881 Act directed that each of the parcels encompassed by the statute be sold separately.  That provision made it possible to identify whether the sale of a particular parcel created a surplus—which, in turn, made it possible to distribute that surplus to the former owner of the parcel.  In the court's view, this separate-sale provision implied that the legislature intended to recognize and protect former property owners' rights and interests in the surplus.  *See id.* at 84–85.

Understandably, Tyler seizes on *Farnham*'s statement that "the right to the surplus exists independently of such statutory provision" to argue that Minnesota recognizes a general common-law right to the surplus.  The Court finds, however, that *Farnham* cannot bear the weight that Tyler attempts to place on it.  Like the United States Supreme Court's decision in *Taylor*, the Minnesota Supreme Court's decision in *Farnham* turned on the interpretation of the words of a particular statute "without constitutional overtones."  *Nelson*, 352 U.S. at 110.  *Farnham* concluded—based on the structure and purpose of the 1881 Act—that the legislature intended that any surplus generated by the sale of a parcel be paid to the former owner of that parcel.  *Farnham*, 19 N.W. at 84–85.  *Farnham* certainly did not suggest that the Minnesota Constitution or any other statute recognizes a former property owner's interest in the surplus, and its

-26-

allusion to the common law was fleeting, ambiguous, and unsupported by citation to any authority.

Even if *Farnham* intended to recognize the former property owner's right to the surplus as a matter of common law rather than as a matter of statutory interpretation, *Farnham* would not render Minnesota's current tax-forfeiture scheme unconstitutional. Common-law rights may, of course, be abrogated by statute.  *See Burt v. Rackner, Inc.,* 902 N.W.2d 448, 453 (Minn. 2017) ("The Legislature abrogates the common law by either express wording or necessary implication." (citation and quotation marks omitted)).  Thus, even assuming that a common-law right to the surplus existed in Minnesota during the late 19th and early 20th centuries, the Minnesota Legislature unambiguously abrogated that common-law right in 1935 when it enacted 1953 Minn. Laws ch. 386 §§ 5–9, later codified at Minn. Stat. § 282.08.  As described above, Minn. Stat. § 282.08 provides a comprehensive and detailed scheme for the distribution of the surplus and does not give the former owner a right to any of those proceeds.

In short, nothing in the constitutions of the United States or Minnesota, nothing in any federal or state statute, and nothing in federal or state common law gives the former owner of a piece of property that has been lawfully forfeited to the state and

-27-

then sold to pay delinquent taxes a right to any surplus.[14]  Without such a right, Tyler

does not have a viable takings claim, and thus her takings claims are dismissed.[15]

_____

[14]Tyler argues that a former property owner's right to the surplus is a "vested" property right, evidently drawing on the reasoning of the *Rafaeli* majority.  ECF No. 33 at 18.  In *Rafaeli*, the Michigan Supreme Court explained that under Michigan law, a "vested" right is one that "is to remain free from unlawful governmental interference." 2020 WL 4037642, at *19.  "To constitute a vested right, the interest must be something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property[.]"  *Id.* (citation and quotation marks omitted).  The Michigan Supreme Court recognized a former property owner's right to the surplus as a "vested" right, and further held that "the ratifiers would have commonly understood this common-law property right to be protected under Michigan's Takings Clause at the time of the ratification of the Michigan Constitution in 1963."  *Id.*

Tyler has not pointed to any authority suggesting that Minnesota recognizes a distinction between "vested" and "ordinary" property rights.  Even if she had, Tyler has not identified a continuous, historical recognition of a former property owner's right to the surplus in Minnesota comparable to the common-law tradition in Michigan described in *Rafaeli*.  Minnesota has been distributing surplus proceeds pursuant to Minn. Stat. § 282.08 for 85 years, and yet Tyler has not pointed to a single case in which any litigant has even *argued*—much less any court has actually suggested—that the statute unconstitutionally deprives a delinquent taxpayer of her property.  Tyler's reliance on *mortgage* foreclosure cases decided early in this State's history, *see* ECF No. 33 at 18, does not persuade the Court that a former property owner's right to the surplus following *tax* foreclosure is a property right protected by the federal or state constitution.

[15]Because Tyler has not suffered a taking under either the United States or the Minnesota Constitution, Tyler's claim seeking a writ of mandamus compelling the County to initiate inverse-condemnation proceedings is also dismissed.  As Tyler acknowledges, an order compelling inverse-condemnation proceedings is a state-law remedy for an unconstitutional taking.  ECF No. 19 at 38–39; *see also N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485 (Minn. 2004) (affirming denial of writ of mandamus compelling commencement of inverse condemnation proceedings where

(continued...)

-28-

D.  *Excessive Fines Claim*

Tyler next argues that the County's retention of the surplus constitutes an

excessive fine.  The Eighth Amendment to the United States Constitution and Article I,

Section 5 of the Minnesota Constitution both provide:  "Excessive bail shall not be

required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[16]

The United States Supreme Court has held that both criminal and civil penalties are

subject to the Excessive Fines Clause.  *Austin v. United States*, 509 U.S. 602, 607–09 (1993)

(explaining that nothing in the text or history of the Eighth Amendment limits its

application to only criminal proceedings).[17]  This Court is mindful, however, that

neither the Supreme Court nor the Eighth Circuit has ever found a tax-related penalty

or forfeiture to constitute an excessive fine.  *But see Wilson v. Comm'r of Revenue*, 656

---

[15](...continued)
plaintiff failed to state a takings claim).

[16]*See, e.g., Wilson v. Comm'r of Revenue*, 656 N.W.2d 547, 552 (Minn. 2003)
(applying federal case law to interpret Minnesota's Excessive Fines Clause).  The
Minnesota Constitution prohibits "cruel or unusual punishments," but the clauses are
otherwise identical.

[17]*See also United States v. Lippert*, 148 F.3d 974, 977 (8th Cir. 1998) ("[T]he
Excessive Fines Clause also applies to *civil* penalties and forfeitures that are punitive in
nature." (emphasis in original)); *Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061
(8th Cir. 2005) (finding that $25.95 million penalty assessed for violations of the 1996
Telecommunications Act was constitutional not because the penalty lacked any
connection to a criminal offense and was therefore not a "fine" within the meaning of
the Eighth Amendment, but because it was not excessive).

-29-

N.W.2d 547 (Minn. 2003) (finding that tax penalty personally assessed against corporate officer for failing to withhold a percentage of employee's wages was an excessive fine under both the United States and Minnesota Constitutions).

To determine whether Minnesota's tax-forfeiture scheme imposes an excessive fine under the Eighth Amendment, the Court must determine whether the forfeiture of the entire value of the property (including the surplus) is a "fine" within the meaning of the Excessive Fines Clause and, if so, whether that fine is "excessive."  The first question—whether a forfeiture is a "fine"—is analyzed by examining the statutory scheme imposing the penalty, while the second question—whether the fine is "excessive"—is a proportionality determination made in light of the facts of a given case.[18]  In support of motion to dismiss, the County argues only that Minnesota's tax-forfeiture scheme does not impose a "fine" within the meaning of the Excessive Fines Clause.

The Supreme Court has held that whether a penalty or forfeiture is a "fine" turns on whether it is a form of punishment.  In *Austin v. United States*, the Court explained that, on the one hand, a penalty or forfeiture that is purely remedial is not a fine, but, on

---

[18]*See United States v. Bajakajian*, 524 U.S. 321, 328–40 (1998) (analyzing whether a forfeiture is punitive by examining text and structure of the statutory scheme authorizing the forfeiture, and analyzing whether the forfeiture is excessive in light of the amount forfeited); *Austin*, 509 U.S. at 619–22 (analyzing whether forfeiture of body shop and mobile home was punitive based on structure and legislative history of the relevant statutory provision).

the other hand, a penalty or forfeiture that "can only be explained as serving in part to punish" *is* a fine.  509 U.S. at 610.  A forfeiture is "remedial" if, for example, it removes dangerous or illegal items from society or compensates the government for a loss.  *Id.* at 621; *see also United States v. Bajakajian*, 524 U.S. 321, 329 (1998).

The County argues that Minnesota's tax-forfeiture scheme is remedial because its primary purpose is to compensate the government for lost revenues due to the non-payment of taxes.  The County further argues that the scheme is clearly not intended to be punitive because it actually confers a windfall on the delinquent taxpayer when the value of the property that is forfeited is less than the amount of taxes owed; when that occurs, the entire tax debt is canceled upon final forfeiture, along with any other liens on the property.  Minn. Stat. § 282.07.  Finally, the County points out that the statutory scheme provides multiple opportunities for the property owner to avoid forfeiture, which provides further evidence that the purpose of the scheme is to collect taxes, rather than to punish delinquent taxpayers.  The Court agrees on all points.

Tyler argues that Minnesota's tax-forfeiture scheme cannot be explained as solely remedial because in many cases—including this one—the government receives far more than what the taxpayer owes when it takes and sells the taxpayer's property.  In *United States v. Bajakajian*, however, the Supreme Court rejected the notion that a penalty or forfeiture must be deemed punitive if the government receives more than what is

-31-

necessary to make it whole.  524 U.S. at 331 (listing civil-forfeiture examples, including customs-related forfeitures, that are remedial rather than punitive even though the amount forfeited may far exceed what is necessary to compensate the government for its loss); *see also id.* at 344–45 (Kennedy, J., dissenting) ("[T]he majority holds customs fines are remedial and not at all punitive, even if they amount to many times the duties due on the goods.  In the majority's universe, a fine is not a punishment even if it is much larger than the money owed." (internal citations omitted)); *see also United States v. Lippert*, 148 F.3d 974, 977–78 (8th Cir. 1998) (noting that *Bajakajian* appears to have narrowed "*Austin*'s expansive test for identifying punishment").  The fact that the operation of Minnesota's tax-forfeiture system may result in a windfall to the government therefore does not compel the conclusion that the system is punitive.

Further, Minnesota's tax-forfeiture scheme bears little resemblance to the forfeiture schemes that were found to be punitive in *Austin* and *Bajakajian.*

In *Austin*, the Court found that a federal statute (21 U.S.C. §§ 881(a)(4) and (a)(7)) that provides for the forfeiture of vehicles and real property used or intended for use in drug-trafficking crimes is punitive.  The Court described several reasons for its conclusion, including:  (1) the statute expressly provides an innocent-owner defense, making forfeiture dependent on the culpability of the owner and evidencing a congressional intent to punish only those involved in the crime of drug trafficking;

(2) the statute ties forfeiture directly to the commission of a criminal offense; and (3) the legislative history shows that Congress enacted the forfeiture provision in order to provide a "powerful deterrent" against committing drug crimes. 509 U.S. at 619–20.

One year later in *Bajakajian*, the Supreme Court found that forfeitures pursuant to 18 U.S.C. § 982(a)(1) are punitive for similar reasons. Section 982(a)(1) provides for forfeiture of "any property . . . involved in" various offenses, including the offense of transporting more than $10,000 in currency into or out of the United States without reporting it. In finding the statute to be punitive, the Court noted that: (1) the statute directs that forfeiture be included as part of the sentence imposed on a person convicted of willful violation of the statutory reporting requirement; and (2) the forfeiture order is imposed at the conclusion of criminal proceedings and only after the defendant has been convicted of a felony. 524 U.S. at 328.

In both *Austin* and *Bajakajian,* the Supreme Court relied heavily on the fact that the challenged forfeitures were closely connected to criminal proceedings. In this case, however, Minnesota's tax-forfeiture scheme does not condition the loss of surplus equity on a criminal conviction—or, for that matter, even on criminal *behavior*. Further, Tyler has pointed to nothing in the text or legislative history of Minn. Stat. § 282 suggesting that the Minnesota Legislature chose not to return surplus equity to delinquent taxpayers in order to punish them.

-33-

In short, Minnesota's tax-forfeiture scheme bears none of the hallmarks of punishment.  It is a debt-collection system whose primary purpose is plainly remedial: assisting the government in collecting past-due property taxes and compensating the government for the losses caused by the non-payment of property taxes.  The Court therefore finds that the statute does not impose a "fine" within the meaning of the Excessive Fines Clause of either the United States or Minnesota Constitution.  Tyler's excessive-fines claims are dismissed.

### E.   *Substantive-Due-Process Claim*

In her amended complaint, Tyler alleges that "Defendants' actions are arbitrary and capricious and fail to comport with substantive due process under the United States Constitution as it [sic] and the relevant Minnesota statutes providing for seizure of the *surplus* are not necessary or even rationally related to the objective sought to be achieved—collection of delinquent taxes—and are not a reasonable means to a permissible objective."  Am. Compl. ¶ 119 (emphasis in original).  Tyler brings the same challenge under the Minnesota Constitution.[19]  *Id.* ¶ 124.  It is not clear from this language whether Tyler's substantive-due-process claims challenge the County's actions in executing Minnesota's statutory tax-forfeiture scheme or whether Tyler

---

[19] *See Lukkason*, 590 N.W.2d at 806 ("Essentially the same analysis and standards apply [to substantive-due-process claims] under the [United States and] Minnesota Constitution[s].").

means to challenge the constitutionality of the statutory scheme itself.  It does not

matter, though, because either way Tyler's substantive-due-process claims fail.

To successfully pursue a substantive-due-process claim, a plaintiff must

demonstrate both that a government official deprived her of "a fundamental right" and

that the government official's conduct "shocks the conscience."  *Folkerts v. City of*

*Waverly*, 707 F.3d 975, 980 (8th Cir. 2013).  Tyler cannot demonstrate either.

First, Tyler has not demonstrated that the County deprived her of a fundamental

right.  Substantive-due-process protections apply only to a very limited subset of rights,

including the right to marry, to have children, to direct the education and upbringing of

one's children, to marital privacy, to bodily integrity, to contraception and abortion, and

perhaps to refuse unwanted lifesaving medical treatment.  *Washington v. Glucksberg*, 521

U.S. 702, 720 (1997).  Substantive due process does not protect a property owner from

being deprived of her property without compensation;[20] that is the job of the Takings

---

[20]Tyler cites two cases—*Lucas v. Forty-Fourth General Assembly of the State of*
*Colorado*, 377 U.S. 713 (1964), and *McCoy v. Union Elevated Railroad Co.*, 247 U.S. 354, 365
(1918)—in support of her claim that the right to own property is a fundamental right
subject to substantive-due-process protections.  Neither case supports her argument.

*Lucas* involved an equal-protection challenge (not a substantive-due-process
challenge) to a legislative-apportionment plan.  In explaining that the "right to cast an
equally weighted vote cannot be denied even by a vote of a majority of a State's
electorate, if the apportionment scheme adopted by the voters fails to measure up to the
requirements of the Equal Protection Clause," 377 U.S. at 736, the United States
Supreme Court quoted *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 638
(continued...)

-35-

Clause. *See Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ("[S]ubstantive due

process is not a blanket protection against unjustifiable interferences with property."

(citation and quotation marks omitted)).

---

[20](...continued)
(1943).  In *Barnette*, the Court said:  "One's right to life, liberty, and property, to free
speech, a free press, freedom of worship and assembly, and other fundamental rights
may not be submitted to vote; they depend on the outcome of no elections."  Tyler
evidently means to rely on the Supreme Court's use of the terms "property" and
"fundamental rights" in the same sentence.  But neither *Lucas* nor *Barnette* holds that the
right to own property (or, say, the right to a free press or to assemble, which are also
mentioned) is a fundamental right subject to substantive-due-process protections.  That
issue was not before either court.

*McCoy* involved a challenge by a hotel owner to the construction of a railroad
near his hotel.  McCoy alleged that the railroad decreased the market value of his hotel
because the trains were noisy, blocked the light, and made the hotel less accessible from
the street.  *McCoy*, 247 U.S. at 355.  The state court declined to award damages, finding
that the detriment to the hotel was offset by the "continuous increase in the value" of
the hotel due to the "increased travel" created by the railroad.  *Id.* at 357.  The question
before the United States Supreme Court was whether the state court's application of this
offset deprived McCoy "of property without due process of law in violation of the
Fourteenth Amendment."  *Id.* at 363.  The Court said that "[t]he fundamental right
guaranteed by the Fourteenth Amendment is that the owner shall not be deprived of
the market value of his property under a rule of law which makes it impossible for him
to obtain just compensation," and then went on to find that McCoy did not suffer a
constitutional injury due to the state's finding that the enhanced market value of the
hotel offset the harm caused by the railroad.  *Id.* at 365–66.  Like *Lucas*, *McCoy* had
nothing to do with substantive due process.

The Supreme Court has often—*in its substantive-due-process decisions*—explicitly
identified the fundamental rights that are protected by that doctrine.  The Court has not
identified property ownership as one of those fundamental rights.  *See Glucksberg*, 521
U.S. at 719-20.

-36-

Second, Tyler has not established that the conduct of any government official "shocks the conscience."  In taking and selling Tyler's condo and retaining the surplus, the County acted in strict compliance with a Minnesota statute that has been used on countless occasions over the past 85 years.  Tyler was given multiple opportunities over a four-year period to prevent the loss of the surplus by simply paying her property taxes—something that law requires and that most citizens do as a matter of routine. Under these circumstances, the Court cannot find that the County's actions were either egregious or outrageous.  *See Folkerts*, 707 F.3d at 980.

Because Minnesota's tax-forfeiture scheme does not infringe a fundamental right, it is not subject to strict scrutiny, but only to rational-basis review.  *See Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020).  The Court must uphold the law if it is "rationally related to a legitimate state interest."  *Id.*  So long as there are "'plausible reasons for [the legislature's] action,'" the statute will survive rational-basis review.  *Id.* (quoting *F.C.C. v. Beach Commc'ns., Inc.*, 508 U.S. 307, 313 (1993)).

Minnesota's tax-forfeiture scheme easily clears that bar.  The County asserts that the government has a legitimate interest in collecting taxes and in encouraging the speedy return of tax-forfeited properties to productive use.  The County further asserts that Minnesota's tax-forfeiture scheme (including the taxpayer's loss of the surplus) is rationally related to that interest because "the ultimate possibility of loss of property

serves as a deterrent to those taxpayers considering tax delinquency." ECF No. 13 at 30.
The Court agrees.  Tyler's substantive-due-process claims are dismissed.

### F.  Unjust Enrichment

Finally, Tyler argues that the County was unjustly enriched when it seized and sold her condo and retained the surplus equity.  "To establish a claim for unjust enrichment under Minnesota law, a plaintiff must demonstrate 'that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit.'" *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (quoting *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001)).

Here, every action that the County took was specifically authorized by Minnesota law.  The County did not receive anything "to which [it] was not entitled." Tyler's claim for unjust enrichment is therefore dismissed.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 11] is GRANTED and this action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

-38-

Dated:  December 4, 2020                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

Geraldine Tyler,

**JUDGMENT IN A CIVIL CASE**

Plaintiff(s),

v.

Case Number:  20-cv-00889-PJS-BRT

Hennepin County, Mark V. Chapin,

Defendant(s).

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

Defendants' motion to dismiss [ECF No. 11] is GRANTED and this action is DISMISSED WITH PREJUDICE.

Date: 12/7/2020

KATE M. FOGARTY, CLERK



# UNITED STATES DISTRICT COURT
### District of Minnesota

| | | | |
|---|---|---|---|
| Warren E. Burger Federal Building and U.S. Courthouse 316 North Robert Street, Suite 100 St. Paul, MN  55101 (651) 848-1100 | U.S. Courthouse 300 South Fourth Street Suite 202 Minneapolis, MN 55415 (612) 664-5000 | Gerald W. Heaney Federal Building and U.S. Courthouse and Customhouse 515 West First Street, Suite 417 Duluth, MN 55802 (218) 529-3500 | Edward J. Devitt U.S. Courthouse and Federal Building 118 South Mill Street, Suite 212 Fergus Falls, MN  56537 (218) 739-5758 |

# CIVIL NOTICE

**The appeal filing fee is $505.00.  If you are indigent, you can apply for leave to proceed in forma pauperis, ("IFP").**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals or the Federal Circuit Court of Appeals (when applicable) from a final decision of the District Court in a civil case.

> *This is a summary only.  For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1.   Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2.   Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under <u>Fed. R. Civ. P. 59</u>; or

3.   Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under <u>Fed. R. Civ. P. 50(b)</u>, to amend or make additional findings of fact under <u>Fed. R. Civ. P. 52(b)</u>, and/or to alter or amend the judgment under <u>Fed. R. Civ. P. 59</u>; or

4.   Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to <u>Fed. R. App. P. 4(a)(5)</u> to extend the time for filing a Notice of Appeal.  This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires.  If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it.  The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

GERALDINE TYLER, on behalf of
herself and all others similarly situated,

                Plaintiff,

v.

HENNEPIN COUNTY, and MARK V.
CHAPIN, Auditor-Treasurer, in his
official capacity,

                Defendants.

Case No. 20-cv-889-PJS-BRT
Judge Patrick J. Schiltz

---

## NOTICE OF APPEAL

Pursuant to Fed. R. App. P. 3(c)(1) and 4(a), notice is hereby given that Plaintiff

Geraldine Tyler, on behalf of herself and all others similarly situated, appeals to the United

States Court of Appeals for the Eighth Circuit from the Judgment in a Civil Case entered in

favor of Defendant on December 7, 2020.

Date:  December 29, 2020

REINHARDT WENDORF & BLANCHFIELD

*/s/ Garrett D. Blanchfield*
Garrett D. Blanchfield (#209855)
Roberta A. Yard (#322295)
332 Minnesota Street, Suite W1099
St. Paul, MN 55101
Phone: (651) 287-2100
g.blanchfield@wblawfirm.com
r.yard@rwblawfirm.com

Charles R. Watkins (*pro hac vice*)
GUIN, STOKES & EVANS, LLC
321 S. Plymouth Court
Suite 1250
Chicago, IL 60604
Telephone: (312) 878-8391
charlesw@gseattorneys.com


Vildan A. Teske (#241404)
Marisa C. Katz (#389709)
TESKE KATZ, PLLP
222 South Ninth Street, Suite 1600
Minneapolis, MN 55402
Telephone: (612)746-1558
teske@tkkrlaw.com
katz@tkkrlaw.com


*Attorneys for Plaintiffs*



# UNITED STATES DISTRICT COURT
## District of Minnesota

Kate M. Fogarty, Clerk
Tricia M. Pepin, Chief Deputy Clerk

| Warren E  Burger Federal Building and U S  Courthouse 316 North Robert Street, Suite 100 St  Paul, MN  55101 (651) 848-1100 | Diana E  Murphy U S  Courthouse 300 South Fourth Street Suite 202 Minneapolis, MN 55415 (612) 664-5000 | Gerald W  Heaney Federal Building and U S  Courthouse and Customhouse 515 West First Street, Suite 417 Duluth, MN 55802 (218) 529-3500 | Edward J  Devitt U S  Courthouse and Federal Building 118 South Mill Street, Suite 212 Fergus Falls, MN  56537 (218) 739-5758 |
|---|---|---|---|

## TRANSMITTAL OF APPEAL

Date:   December 30, 2020

To:      U.S. COURT OF APPEALS, 8TH CIRCUIT

From:  M. Price, U.S. District Court-Minnesota

In Re:  District Court Case No.:  20-cv-889 PJS/BRT
         Eighth Circuit Case No.:  Not Yet Assigned
         Case Title:  Tyler v. Hennepin County et al

The statutory filing fee has:
☒ been paid, receipt number: AMNDC-8350123
☐ not been paid as of
         IFP      ☐ is    ☐ is not pending
☐ been waived because:
              ☐ Application for IFP granted        ☐ USA filed appeal

Length of Trial:  n/a

Was a court reporter utilized?        ☒ Yes   ☐ No
         If yes, please identify the court reporter: Debra Beauvais- 612-664-5102